NANCY C. HIRTLE *v.* ROBERT L. HIRTLE, JR.
(14008)

PETERS, C. J., SHEA, CALLAHAN, GLASS and MENT, Js.

Argued December 5, 1990—decision released February 12, 1991

*Louis Kiefer,* for the appellant (plaintiff).

*Susan M. Cormier,* with whom was *Wesley W. Horton,* for the appellee (defendant).

PETERS, C. J. This case concerns the validity of a stipulated judgment modifying the provision of a dissolution judgment that had previously obligated one of the parties to pay postmajority support for the parties' children. The plaintiff, Nancy C. Hirtle, filed a four count motion asking that the defendant, Robert L. Hirtle, Jr., be held in contempt for failing to pay child support as well as various other financial obligations stipulated in their modified dissolution judgment.[1] The trial court, *Steinberg, J.,* without making a finding of contempt, ordered the defendant to pay $2300 for support calculated at the rate set in the modified judgment.[2] After a rehearing at the defendant's request,

---

[1] The plaintiff sought, in addition, to be reimbursed for specified medical expenses, wedding expenses and educational expenses for their children, as well as for attorney's fees associated with her request for reimbursement.

[2] The court also ordered the defendant to pay the plaintiff a stipulated sum toward wedding expenses, and for her attorney's fees. This part of the trial court's order has not been appealed.

the court limited the support arrearage to the lesser rate set in the original judgment. The plaintiff appealed this reduction in the support order to the Appellate Court. We transferred her appeal here in accordance with the provisions of Practice Book § 4023 and now reverse.

The underlying facts are established by the record. In 1980, the trial court, *Cohen, J.,* rendered a judgment dissolving the marriage of the parties. The decree of dissolution incorporated a written separation agreement between the parties specifying that the defendant would "pay to the plaintiff as child support, the sum of $35.00 per week per child, a total of $70.00 per week commencing February 15, 1980. If either child is enrolled as a full time college student in a baccalaureate program, [the] defendant shall continue to pay the aforesaid support to [the] plaintiff for such child for each full week of actual residence by said child with [the] plaintiff." While paying support for the two children, the defendant had "the exclusive right to claim each child as an exemption for federal and state income tax purposes." The decree of dissolution also obligated the defendant to pay the plaintiff alimony in the amount of $150 per week, until the defendant reached the age of sixty-five or until the plaintiff remarried or died.

A stipulated judgment rendered on September 18, 1984, by the court, *F. X. Hennessy, J.,* modified, in part, the terms of the 1980 decree of dissolution. Because of the plaintiff's remarriage, her alimony was terminated. The modified decree of dissolution further provided that: "The support order for the child Robin is modified so that the new support order is $115 for her support weekly." Robin, the parties' younger daughter, was then still a minor. No appeal was taken from this stipulated judgment.

The defendant stopped paying child support for Robin when she became eighteen. The plaintiff then brought the present proceedings asking that the defendant be held in contempt for his failure to honor his financial obligations under the modified decree of dissolution. In calculating the amount of child support to which the plaintiff was entitled, the trial court, *Steinberg, J.,* first awarded her $115 per week, in accordance with the modified decree of dissolution. After reargument, however, the court limited her recovery to $35 per week in accordance with the terms of the original, unmodified decree of dissolution. The trial court based its revised conclusion on two grounds. It determined that no court had the authority to modify postmajority support without an express written agreement of the parties and that the September 18, 1984 stipulated judgment did not manifest a written agreement of the parties for postmajority support.

The plaintiff's appeal raises three issues.[3] She maintains that the trial court: (1) exceeded its authority in granting the defendant's motion to open and reargue; (2) mistakenly concluded that it lacked independent authority to modify the defendant's obligation to provide postmajority support for his daughter; and (3) mistakenly found that the September, 1984 modification did not incorporate an agreement by the defendant to pay postmajority support to his daughter. We agree with the trial court's resolution of the first two issues, but not with its disposition of the third.

[3] The defendant filed a statement pursuant to Practice Book § 4013 (1) seeking appellate review of the following issue: "Did the trial court err in holding that the modification entered on September 18, 1984, did not eliminate any postmajority weekly support requirements in the original judgment?" In oral argument in this court, defense counsel expressly conceded that the defendant was no longer contesting the trial court's factual finding that there had been an oral agreement, before Judge Hennessy, to increase postmaturity child support to $115 a week.

I

The plaintiff maintains that the trial court, having rendered a final judgment on November 27, 1989, that the defendant owed a child support arrearage in the amount of $115 per week, lacked the authority thereafter to grant the defendant's motion, dated December 12, 1989, to open the judgment and to reargue. The plaintiff contends that a valid motion to open a judgment and to reargue requires at least an allegation that the moving party is relying upon newly discovered evidence not previously discovered or discoverable. We disagree.

The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book § 326[4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 533–34, 577 A.2d 288 (1990); *Gillis* v. *Gillis,* 214 Conn. 336, 340–41, 572 A.2d 323 (1990); *Sanchez* v. *Warden,* 214 Conn. 23, 35, 570 A.2d 673 (1990); *Acheson* v. *White,* 195 Conn. 211, 214–15, 487 A.2d 197 (1985); *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713, 462 A.2d 1037 (1983). The present record does not demonstrate that the trial court acted unreasonably or in clear abuse of its discretion.

---

[4] Practice Book § 326 provides, in relevant part: "SETTING ASIDE OR OPENING JUDGMENTS. Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court."

General Statutes § 52-212a is virtually identical in language to Practice Book § 326.

## II

The plaintiff next maintains that the trial court misconstrued the statutory and case law authority governing support agreements for children past the age of majority. Contrary to the ruling of the trial court, the plaintiff contends that a court has jurisdiction to modify an agreement for postmajority support even where the parties have not agreed in writing to such a modification. We agree with the trial court's holding that General Statutes § 46b-66[5] requires agreements for the modification of postmajority support to be in writing.

The 1977 amendment to § 46b-66 was a legislative response to our holding, in *Sillman* v. *Sillman,* 168 Conn. 144, 150, 358 A.2d 150 (1975); see also *Kennedy* v. *Kennedy,* 177 Conn. 47, 49–50, 411 A.2d 25 (1979); *Simon* v. *Simon,* 170 Conn. 24, 363 A.2d 1054 (1975); that the Superior Court's jurisdiction to make orders of child support extended only to minor children. "The purpose of the amendment was to ensure that a written agreement involving support for adult children and submitted to the court by the parties in connection with an action for a dissolution of marriage could be incorporated into the judgment or orders of the court, thereby making such orders enforceable through contempt proceedings." *Arseniadis* v. *Arseniadis,* 2 Conn. App. 239, 244,

---

[5] General Statutes § 46b-66 provides, in relevant part: "REVIEW OF AGREEMENTS; INCORPORATION INTO DECREE. In any case under this chapter where the parties have submitted to the court an agreement concerning the . . . support of any of their children . . . the court shall . . . determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . . If the agreement is in writing and provides for the . . . support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-2d."

477 A.2d 152 (1984); *Albrecht* v. *Albrecht,* 19 Conn. App. 146, 154, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989).

Although General Statutes § 46b-86 (a)[6] confers authority upon the Superior Court to modify "any final order" for the payment of support, that authority must be read in conjunction with the jurisdictional limitations imposed by § 46b-66. As the Appellate Court held in *Albrecht* v. *Albrecht,* supra, 155–57, the same jurisdictional rules apply to the incorporation of an order for postmajority support in the original dissolution proceedings as to a subsequent order modifying postmajority support. In both cases, § 46b-66 requires a written agreement of the parties.

The decision of this court in *Barnard* v. *Barnard,* 214 Conn. 99, 115, 570 A.2d 690 (1990), does not compel a different conclusion. In that case, the issue was whether, as § 46b-86 (a) expressly permits, the parties had effectively precluded any subsequent modification of postmajority support by the terms of the separation agreement that had been incorporated into the decree dissolving their marriage. In that context, we noted that the postmajority support order could be judicially modified "only if the agreement so incorporated does not preclude modification." Id., 114. Our repeated citations of *Albrecht* v. *Albrecht,* supra, indicate that we did not intend to foreclose the consideration of other constraints on the validity of a modification of a postmajority support order. *Barnard* v. *Barnard,* supra, 113–14. We therefore concur with the Appellate Court in *Albrecht* v. *Albrecht,* supra, and with the trial court

---

[6] General Statutes § 46b-86 provides, in relevant part: "MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party."

in this case, that a written agreement is a jurisdictional prerequisite to the valid modification of an order for postmajority support.

## III

The plaintiff finally challenges the finding of the trial court that the parties had not agreed to a written modification of the defendant's obligation to provide postmajority support for his younger daughter. We agree with the plaintiff that this finding cannot be sustained.

In addressing this question, we need to recall the procedural context in which it is raised. In 1984, the defendant, himself an attorney, agreed through counsel to a stipulated judgment modifying the amount of his obligation to pay postmajority support. He took no appeal from that stipulated judgment, and even now does not allege that it was obtained by fraud, duress, accident or mistake. *Connecticut Pharmaceutical Assn.* v. *Milano,* 191 Conn. 555, 558, 468 A.2d 1230 (1983); *Celanese Fiber* v. *Pic Yarns, Inc.,* 184 Conn. 461, 466, 440 A.2d 159 (1981); *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980). He has never filed a motion to modify its terms. Instead, he now resists its enforcement by a collateral attack on its validity. Final judgments are, however, presumptively valid; *Lampson Lumber Co.* v. *Hoer,* 139 Conn. 294, 298, 93 A.2d 143 (1952); *Coit* v. *Haven,* 30 Conn. 190, 197–98 (1861); *Robertson* v. *Fazzalaro,* 33 Conn. Sup. 569, 573–74, 363 A.2d 755 (1976); and collateral attacks on their validity are disfavored. *Santora* v. *Miklus,* 199 Conn. 179, 188, 506 A.2d 549 (1986); *Monroe* v. *Monroe,* 177 Conn. 173, 177–78, 413 A.2d 819 (1979), appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); 1 Restatement (Second), Judgments (1982) § 12.

The defendant's collateral attack can be sustained only if the record demonstrates that the trial court,

*F.X. Hennessy, J.,* had no subject matter jurisdiction to increase the defendant's support obligation because the court was never presented a written agreement of modification. Since "[j]urisdictional facts are conclusively presumed in domestic courts of general jurisdiction, even when not found by the court, unless the record itself shows the contrary"; *Robertson* v. *Fazzalaro,* supra, 573; it was the defendant's burden to prove the existence of a jurisdictional deficiency. Cf. *Packer Plastics, Inc.* v. *Laundon,* 214 Conn. 52, 57, 570 A.2d 687 (1990). Accordingly, the defendant cannot prevail if there is an absence of evidence to establish whether the stipulated judgment modifying the terms of the dissolution decree was grounded in the written agreement of the parties.

The evidence proffered to show a lack of jurisdiction was the record of the proceedings before Judge Hennessy. Although the defendant testified, in the proceedings before Judge Steinberg, that he had participated in oral discussions antecedent to the modified judgment, he acknowledged that he had not been present in court at the time of the stipulated judgment. He therefore had no personal knowledge of what had transpired. The court record consists of the concededly skeletonic description of the terms of the modified judgment, initialed by M.H.[7] and signed "Hennessy, J.," and the transcript of the proceedings before Judge Hennessy. The transcript reveals the following. After verifying the presence of counsel for the parties, the court stated: "[T]he agreement has been given to me by the parties as to the judgment of April 9th, 1980, [which] is modified as follows: Alimony award entered therein is terminated because the plaintiff has remarried. The support order for the child Robin is modified so that the new support order is one hundred and fif-

---

[7] The initials corresponded with the initials of Maxwell Heiman, who was the defendant's attorney at that time.

teen dollars for her support weekly. Is that the agreement, gentlemen?" Upon obtaining the assent of counsel, the court then stated: "It is so ordered." Notably, the court, relying upon "the agreement . . . given to me," itself stated the terms of the modification, rather than inviting an oral recital by counsel.

On this meager record, the defendant has failed to overcome the presumption that Judge Hennessy was reading from a written document when he described the terms of the modified support order to which the parties had agreed. The modified judgment of post-majority support has therefore not been shown to be jurisdictionally defective.[8] Further proceedings will be required to determine the amount of the defendant's arrearage in accordance with the terms of the modified judgment.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[8] Although the trial court's invalidation of the modified support order rested on the absence of a written agreement, the defendant's appellate brief suggests that such an agreement must be signed by the parties, as well as written, and that the authority of the defendant's attorney at the time of the modification must be independently established. The procedural propriety of these claims is doubtful, the defendant having failed to raise them in a properly filed statement pursuant to Practice Book § 4013 (a). On their merits, we know of no authority, nor has the defendant cited any, that would elevate such claims to jurisdictional status for the purposes of a collateral attack on a judgment.

The defendant also argues, in his brief, that the modified judgment of support, as a matter of interpretation, was not intended to include post-majority support, and that the trial court erroneously found to the contrary. Although a Practice Book § 4013 (a) statement was timely filed to raise this issue, it was abandoned at oral argument. See footnote 3, supra.