[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FACTS
The plaintiff, Maureen Briand (formerly Maureen MacIver), and the defendant, Chester MacIver, were married on July 6, 1968 in Waterbury, Connecticut. (Separation Agreement, p. 1.) Three children were born of the marriage: Kelly Ann, born May 25, 1969; Karen Elizabeth, born October CT Page 11106 26, 1971; and Donald Timothy, born September 13, 1981. (Complaint, ¶ 4.) The parties' separation agreement dated November 10, 1986 provides the following: "The husband shall pay to the wife as child support, the sum of $60.00 per child for a total of $180.00 per week. Said payments shall continue until June 1, 1988, when the payments, with respect to the eldest child. KELLY ANN MacIVER, shall cease and at that point the payments of child support shall continue at the rate of $180.00 per week, with $90.00 being attributed to each of the two remaining minor children. Said payments of $180.00 per week will continue until October 26, 1989, when the parties' minor child, KAREN ELIZABETH MacIVER, reaches the age of majority. As of that time, the payment of child support will be reduced to $100.00 per week, said $100.00 being attributable to the parties' remaining minor child, DONALD TIMOTHY MacIVER." (Separation Agreement, ¶ 3.) The agreement also provided: "It is understood that the child support for the parties' eldest child, KELLY ANN MacIVER, continues under this Agreement beyond the time when such child reaches the age of majority." (Separation Agreement, ¶ 4.) Reading these two provisions together, the separation agreement evidences an understanding that the parties were agreeing to post-majority support only for Kelly. The court found the separation agreement to be fair and equitable, and the terms contained therein were incorporated into the divorce decree dated November 13, 1986. (Final Judgment, p. 1.)
On July 28, 1999, the defendant filed a motion for modification of custody and child support. More specifically, he sought a decrease in his child support obligation and an order that he have physical custody of Donald as he was currently living with the defendant.
The plaintiff filed an objection to the defendant's motion on October 8, 1999. In her objection, the plaintiff argues that General Statutes § 46b-84(b) is not applicable in the present case because the statute's limitation provision expressly provides that it only applies to divorce decrees that were entered on or after July 1, 1994, and the divorce decree in the present case was entered in 1986. Finally, she argues that a change in the custody order is not necessary since Donald has since attained age eighteen.
The defendant filed a memorandum of law in support of his motion for modification regarding child support. In his memorandum of law, the defendant alleged that Donald has been a special education student since he was three years old, that Donald changed his physical residence to live with the defendant in July 1999, and that the plaintiff has not provided any support for Donald since that time. Additionally, he alleged that Donald turned eighteen on September 13, 1999 and that he will not graduate high school until June 2001. The defendant argues that the limitation provision in General Statutes § 46b-84 (b) violates the CT Page 11107 equal protection clauses of both the federal and state constitutions.[1]
The plaintiff failed to file a memorandum of law in opposition to the defendant's motion for modification.
A review of relevant Connecticut case law reveals no reported Supreme, Appellate or Superior Court decisions involving an equal protection challenge to General Statutes § 46b-84 (b). Nor has there been any similar equal protection challenges in Connecticut. Therefore, this case presents the court with an issue of first impression.
 ISSUE
Whether General Statutes § 46b-84(b) violates the equal protection clauses of either the federal or state constitutions?
 DISCUSSION
It is a "well recognized jurisprudential principle that the party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) State v. Jason B., 248 Conn. 543,556, 729 A.2d 760 (1999). See also Barton v. Ducci ElectricalContractors, 248 Conn. 793, 812, 730 A.2d 1149 (1999) (stating "that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger" (Internal quotation marks omitted)). When dealing with a constitutional challenge to a statute, the court must "indulge in every presumption in favor of the statute's constitutionality. . . ." (Internal quotation marks omitted.) State v.Jason B., supra, 248 Conn. 556. See also Barton v. Ducci ElectricalContractors, supra, 248 Conn. 812 (stating that "every statute is presumed to be constitutional" (Internal quotation marks omitted.)).
 I EQUAL PROTECTION CLAUSE OF THE FEDERAL CONSTITUTION
"[T]o implicate the equal protection clause under the . . . federal constitution . . . it is necessary that the state statute or statutory scheme in question, either on its face or in practice, treat persons standing in the same relation to it differently. . . . Thus, the analytical predicate of consideration of an equal protection claim is a determination of who are the persons similarly situated. . . ." (Citation omitted; internal quotation marks omitted.) State v. Jason B., supra,248 Conn. 558-59. "The equal protection clause does not require absolute CT Page 11108 equality or precisely equal advantages between such similarly situated persons. . . . To determine whether a particular classification violates the guarantees of equal protection, the court must consider the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. . . ." (Citations omitted; internal quotation marks omitted.) Id., 559.
"When a statute is challenged on equal protection grounds . . . the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined. If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest." (Internal quotation marks omitted.)Barton v. Ducci Electrical Contractors, supra, 248 Conn. 813-14. "The second tier, intermediate scrutiny, uses an `exacting scrutiny' or `strict rationality' test. This test applies in cases involving such classifications as those based on gender and illegitimacy. Under the `exacting scrutiny' or `strict rationality' tests, classifications must serve important governmental objectives and "must be substantially related to achievement of those objectives.'" State v. Concepcion, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 159081 (June 17, 1996, Spada, J.) (17 Conn.L.Rptr. 512, 514), quoting Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451,50 L.Ed.2d 397 (1976). "If the statute does not touch upon either a fundamental right or a suspect class [or if intermediate scrutiny is not applicable], its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) Barton v. DucciElectrical Contractors, supra, 248 Conn. 813-14.
 A Classification Between Similarly Situated Persons
First, the court must determine if the challenged portion of General Statutes § 46b-84 (b) creates a classification between similarly situated persons. General Statutes § 46b-84 (b) provides: "If there is an unmarried child of the marriage who has attained the age of eighteen, is a full-time high school student and resides with a parent, the parents shall maintain the child according to their respective abilities if the child is in need of maintenance until such time as such child completes the twelfth grade or attains the age of nineteen, whichever first occurs. The provisions of this subsection shall apply CT Page 11109 only in cases where the decree of dissolution of marriage, legal separation or annulment is entered on or after July 1, 1994." (Emphasis added.) This last sentence, which contains a prospective limitation, is the only part of the statute challenged by the plaintiffs. As such, the court will only examine the prospective limitation portion of General Statutes § 46b-84(b) when determining if any classification is created by the statute.
The defendant argues that the classification created by the limitation provision set forth in General Statutes § 46b-84(b) is between children, like Donald, whose parents were divorced before July 1, 1994, and children whose parents were divorced on or after July 1, 1994.
There is no indication in the legislative history for General Statutes § 46b-84 (b) that the legislature considered or intended creating any classifications by enacting the prospective limitation portion of the statute. In fact, most of the legislative history concerns an unrelated amendment for post-majority support while a child attends college. A reading of the prospective limitation portion of General Statutes §46b-84(b) establishes that a classification was created based on the date an order was entered by the court. The classification created by the prospective limitation portion of the statute does not directly involve the child and others similarly situated, but rather involves the parties to a marital dissolution, annulment or legal separation and their parental obligations of support, nor does it necessarily entail agreements or contracts between the parties that are incorporated into court orders as there is no such requirement in the statute. As such, the classification created by the prospective limitation portion of General Statutes § 46b-84(b) involves parties whose decrees of dissolution, annulment or legal separation were entered on or after July 1, 1994, and parties whose decrees were entered before July 1, 1994.
 B Applicable Standard of Review
Second, the court must determine what standard of review is applicable given the nature of the above-referenced classification.
The defendant does not claim that General Statutes § 46b-84(b) impinges on a suspect class or a fundamental right, nor is there a basis for such a claim. Similarly, he does not claim that the classification created by the limitation provision set forth in General Statutes §46b-84(b) is quasi-suspect, nor is there is a basis for such a claim. Thus, neither strict nor intermediate scrutiny applies in the present case; rather, the rational basis test is the appropriate standard of CT Page 11110 review to be applied.
 II RATIONAL BASIS STANDARD OF REVIEW
"The court's function under the rational basis test is to decide whether the classification and disparate treatment inherent in a statute bear a rational relationship to a legitimate state end and are based on reasons related to the accomplishment of that goal. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. . . ." (Citations omitted; internal quotation marks omitted.) Barton v. Ducci ElectricalContractors, supra, 248 Conn. 814. "The test . . . is whether this court can conceive of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis. . . . Further, the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." (Citations omitted; internal quotation marks omitted.) Id., 818. See also State v. Jason B., supra, 248 Conn. 559 (stating that "[i]t is irrelevant whether the conceivable basis for the challenged distinction actually motivated the legislature" (Internal quotation marks omitted.)).
 A Legitimate State End
Applying the rational basis test to this case, the court must determine if there is a legitimate governmental purpose for the classification. The defendant maintains that the objective of the statute is to ensure continued support for children beyond the age of majority when such a need exists.
The legislature did not articulate any legitimate governmental purposes behind the prospective limitation of General Statutes § 46b-84(b). As noted above, however, this does not prevent the court from interpreting the statute to find a legitimate government purpose for the limitation provision. The legitimate governmental purposes served by the prospective limitation in General Statutes § 46b-84(b) are the finality of judgments and the preservation of the expectations that flow therefrom. CT Page 11111
If General Statutes § 46b-84(b) was applied retroactively, then the floodgates would open and the courts would be consumed by requests for extended support. Such requests would be allowed regardless of how long ago the decree of divorce, legal separation or annulment was entered. Additionally, the government has an interest in enforcing private agreements or contracts that have been incorporated into decrees for dissolution, separation or annulment. This conserves judicial resources and encourages private resolution of family issues. Likewise, the government has an interest in preserving and enforcing orders that were entered by the courts in dissolution, separation and annulment proceedings. This would conserve judicial resources because the courts would not be forced to re-work decrees in order to account for extended support and its affect on the other financial orders in the decree. Otherwise, the public would have no confidence in the judiciary to resolve disputes in a conclusive manner. Finally, prospective application of General Statutes § 46b-84(b) preserves the delicate balance of financial and property awards in private agreements and court orders because child support awards are often intertwined with or connected to property distributions and/or spousal support awards. See Dietter v.Dietter, 54 Conn. App. 481, 497, 737 A.2d 926, cert. denied,252 Conn. 906, 743 A.2d 617 (1999) ("The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.)).
The legitimate governmental purposes served by the prospective limitation in General Statutes § 46b-84(b) are the finality of judgments and the preservation of the expectations that flow therefrom.
 B Rational Relationship
The court must next determine whether there is a rational relationship between the classification created by the prospective limitation in General Statutes § 46b-84 (b) and the legitimate governmental purposes served by this classification. The defendant argues that the limitation provision set forth in General Statutes § 46b-84(b) serves no rational purpose.
Since October 1, 1977, parties to a dissolution of marriage proceeding have had the power to sign agreements for post-majority support that would be incorporated into divorce judgments or orders and enforced by the courts. See Hirtle v. Hirtle, 217 Conn. 394, 399, 586 A.2d 578
CT Page 11112 (1991). See also Snider v. Snider, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 246893 (July 22, 1996, Doherty, J.) (stating that our "Supreme Court has consistently held that support obligations cease after the child has attained the age of majority unless there is some binding agreement between the parties to the contrary"). According to the legislative history for General Statutes § 46b-84(b), the legislature recognized this power to agree to post-majority support but acknowledged that agreements for such support were routinely not being made. See 37 S. Proc., Pt. 6, 1994 Sess., p. 1805, remarks of Senator Upson ("And the reason we had some nay votes in Judiciary, because they felt that lawyers should actually . . . negotiate this in advance, and quite frankly, that's not the case when a divorce, certain[ly] a pro se divorce."); 37 H.R. Proc., Pt. 9, 1994 Sess., p. 3066-67, remarks of Representative Wollenberg ("In a domestic matter where there is an agreement, I think most lawyers who represent someone with a child in this capacity should not go away from the bargaining table unless that child were taken care of within the agreement. Evidently, I am hearing that that does not happen these days. That they are not working it into the agreement and therefore, the need is felt and we must do this by statute."). As a result, the legislature expressed the desire to guarantee support for children through high school or until age nineteen, whichever comes first, in all future cases because of the importance of obtaining a high school diploma and the failure of parties to reach agreements providing for such support. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1994 Sess., p. 1312, remarks of Sally Oldham (Chairman for the Connecticut Bar Association, post-majority child support committee) ("It's increasingly common that children do not graduate from high school until well after 18th or even 19th birthday. In addition, an individual who lacks a high school diploma in this country today, is both socially stigmatized and vocationally handicapped. We believe every child should be entitled to support until this milestone is achieved."); 37 S. Proc., supra, p. 1806, remarks of Senator Upson. ("So it is very specific and there is no question as to the intent and it shall not take effect until July 1, 1994, and for those divorces and dissolutions which go into effect after that date. It's not a question.").
The only way the legislature could guarantee such support in future cases without affecting the finality of judgments that were already entered and the expectations that had invariably arisen from these judgments was to ensure that General Statutes § 46b-84(b) would only be applied on a prospective basis. Clearly this exhibits a rational relationship between the classification and the governmental purposes behind the statute. Based on the foregoing, there is a rational relationship between the classification created by the prospective limitation in General Statutes § 46b-84(b) and the legitimate CT Page 11113 governmental purposes served by this classification.
Accordingly, it is the conclusion of the court that General Statutes § 46b-84(b) does not violate the equal protection clauses of either the federal or state constitutions.
Hon. Andre M. Kocay, J.