[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this court is the motion by the defendant, Cooke Industries Inc. Pension Fund (Cooke), to open the further supplemental judgment issued by the court, Rodriguez, J., on August 28, 2000.
On July 22, 1998, the plaintiff, Ocwen Federal Bank, brought this action to foreclose the piece of real estate known as 5 Seabreeze Place, Norwalk (property), against the defendants, David Busby, Bernard Kershner, and a series of creditors or lienholders, including Cooke, Kenneth DiNardo and Pat DiNardo.[1] On December 21, 1998, the court,D'Andrea, J., issued an order of foreclosure by sale. On October 20, 1999, the plaintiff sent out notice to all subsequent encumbrancers, including Cooke and DiNardo, informing them that $103,011.58 of the sale proceeds remained after initial distribution and were deposited with the court. The plaintiff further notified I that the parties claiming a right to the remaining funds should file an affidavit of debt with the court, setting forth their claim for the determination of priorities. On CT Page 1669 November 3, 1999, Cooke filed its affidavit, but did not certify that it had served a copy to the other parties of record, as required by Practice Book § 10-12(a).[2] On December 27, 1999, DiNardo filed his affidavit, together with the requisite certification. On February 9, 2000, the court, Hickey, J., issued a partial supplemental judgment, which left approximately $20,322.69 (funds) remaining to be applied to subsequent creditors or lienholders. On March 15, 2000, DiNardo filed a motion for further supplemental judgment, supported by a draft of further supplement judgment, his own affidavit of debt and the affidavits that he had received from other parties of record, which did not include Cooke's affidavit because Cooke had not sent a copy to DiNardo. On May 5, 2000, DiNardo filed a motion for determination of priorities and further supplemental judgment, supported by a memorandum of law, a draft of further supplemental judgment, his own affidavit of debt, and the affidavits that he had received from the other interested parties.
On May 11, 2000, DiNardo filed an objection to Cooke's affidavit of debt, requesting that the court not consider Cooke's affidavit because of Cooke's failure to comply with the service requirements of Practice Book §§ 7-6,[3] 10-12 and 10-13.[4] It is not disputed that hut for Cooke's failure to comply with the rules of practice Cooke would have priority over DiNardo in claiming its interest in the funds. DiNardo alleged in the objection that at the time he filed his original motion for further supplemental judgment on March 15, 2000, he was unaware of the presence in the court's file of Cooke's affidavit because he had never received a copy from Cooke. DiNardo alleges further that not until the afternoon of May 1, 2000, after the interested parties had appeared at the short calendar session to address his motion, did he learn for the first time of the existence of Cooke's affidavit. DiNardo claimed that Cooke's attorney agreed to fax a copy of Cooke's affidavit filed with the court to his attorney, but his attorney has never received a copy. On May 18, 2000, Cooke filed an opposition to DiNardo's objection. On May 22, 2000, the court, Rodriguez, J., summarily sustained the objection following the parties' oral argument, which effectively removed Cooke from the list of priorities. On June 26, 2000, DiNardo filed an objection to Cooke's motion to reconsider the court's decision sustaining DiNardo's objection to Cooke's affidavit of debt; Cooke, however, did not file its motion to reconsider until July 3, 2000.[5] On August 14, 2000, the court, Rodriguez, J., summarily denied the motion to reconsider. On August 28, 2000, the court, Rodriguez, J., granted DiNardo's proposed list of priorities, which excluded Cooke, and issued an order of further supplemental judgment based on the motion for such a judgment filed by DiNardo on August 25, which also excluded Cooke.
On September 14, 2000, Cooke timely filed the present motion to open the further supplemental judgment, and a motion to reargue priorities, CT Page 1670 supported by memoranda of law. On October 2, 2000, DiNardo filed an objection to the motion to open. On the same day, Cooke and DiNardo appeared at the short calendar session before the undersigned and made oral argument regarding Cooke's motion to open.
A motion to open judgment is governed by Practice Book § 17-4.[6]
The Supreme Court has held that "[t]he principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation." Hirtle v.Hirtle, 217 Conn. 394, 398, 586 A.2d 578. 580 (1991).
Although a specific list of what must be established by a moving party in order to open a judgment has not been defined, the Supreme Court has said that "a motion to open judgment ought to be [granted] when there appears cause for which the court acting reasonably would feel bound in duty to do so." Steve Vigilone Sheet Metal Co. v. Sakonchick,190 Conn. 707, 710-11, 462 A.2d 1037, 1040 (1983). Further, if a party is seeking to present additional evidence, the motion should be granted if the evidence is "likely to affect the verdict." Id., 712.
Ultimately, the decision to open a judgment rests with the discretion of the trial court, which has the inherent power to open, correct, modify or vacate a judgment. TLC Development, Inc. v. Planning and ZoningCommittee, 215 Conn. 527, 533-34, ___ A.2d 288, 291 (1990) (motion to open judgment addressed to discretion of trial court); Steve Vigilone SheetMetal Co. v. Sakonchick, supra, 190 Conn. 710 (noting court's inherent powers).
Cooke advances three arguments in support of its motion. First, it argues that General Statutes § 49-27 governs the distribution of proceeds from the sale of the foreclosed property and that the court violated that statute in sustaining DiNardo's objection to its affidavit.[7] Specifically, Cooke argues that the court's decision effectively "nullified the existence of [Cooke's] mortgage" in violation of the statute's requirement that payment be made "to the fullest extent possible [to] the encumbrancers of record."
This court disagrees with Cooke's argument that the court violated the statute in disregarding its affidavit. The statute makes it clear that an encumbrancer must prove its entitlement to the funds realized from a foreclosure by sale by litigating against other claimants; its entitlement is not automatically ensured by its priority as recorded in the land records. See Voluntown v. Rytman, 27 Conn. App. 549, 556.607 A.2d 896, cert. denied, 223 Conn. 913, 614 A.2d 831 (1992).[8]
CT Page 1671 Because the court may order payment to an encumbrancer of record only "to the extend there is no controversy"; id.; the court did not violate the statute by disregarding Cooke's affidavit based on its determination that Cooke had improperly filed its affidavit.[9] Cooke may question the soundness of the court's factual finding or legal conclusion, but there is no evidence to support its claim that the court violated the statute.
This court agrees with Cooke, however, that the statute should be liberally construed to protect the interests of the encumbrancers. The statute provides in part: "If any part of the debt or obligation secured by the mortgage or lien foreclosed or by any subsequent mortgage or lien was not payable at the date of the judgment of foreclosure, it shallnevertheless be paid as far as may be out of the proceeds of the sale asif due and payable. . . . (Emphasis added.) General Statutes § 49-27. It can be reasonably inferred from the language of the statute that the intent of the statute is to elevate substance over form in order to protect, as far as possible, the interests of the encumbrancers.
Second, Cooke argues that because Practice Book § 10-12 does not provide for either a period of time within which service must be made or the penalty for failure of service, the rules of practice cannot form the basis for the court's order denying Cooke's priority. DiNardo argues that it is not the rules of practice that form the basis for denying Cooke's priority, but Cooke's own failure to file a valid affidavit as required by the rules of practice. In the absence of any authorities supporting either party's argument, it was within the court's discretion to rule the way it did.[10]
Finally, Cooke argues that the law abhors penalty and forfeiture because DiNardo suffered no cognizable injury from the initial lack of personal notice of its affidavit. Cooke argues that DiNardo knew, or should have known by the exercise of due diligence, of the priority of Cooke's mortgage because the land records and the complaint mention that Cooke's mortgage is immediately prior to DiNardo's. DiNardo disagrees, arguing that only six, including Cooke, of the twenty-four subsequent encumbrancers filed an affidavit of debt, and that he would not have been aware of Cooke's claim unless Cooke had served him a copy of its affidavit. DiNardo argues further that he was unfairly surprised by the late notice of Cooke's claim on May 1, 2000, when his attorney received an unexpected telephone call from Cooke's attorney.
Cooke concedes that its attorney failed to certify copies of its affidavit under the mistaken belief that the affidavit need only be filed with the court and the plaintiff. Cooke claims, nevertheless, that "[p]rior to the entry of the August 28, 2000 Supplemental Judgment, which is the subject of this motion to reopen, that affidavit was sent to all CT Page 1672 parties of record." DiNardo disagrees, contending that although Cooke sent a copy of its affidavit filed with the court to all parties of record, Cooke sent it only as an "exhibit" to pleadings filed by Cooke, first accompanying Cooke's opposition to DiNardo's objection to its affidavit, and second accompanying Cooke's motion to reconsider the court's decision sustaining DiNardo's objection to its affidavit. DiNardo argues that "[a]ttaching the objected-to affidavit to pleadings as an exhibit is not the same as service of the affidavit on the parties as required by the rules of practice." DiNardo claims that "[t]o date, [Cooke] has never filed a valid affidavit with the court properly served on all parties in this action."
This court finds that the distinction drawn by DiNardo is unpersuasive. The record shows that Cooke certified to all parties of record copies of its pleadings together with copies of its affidavit of debt in connection with its opposition to DiNardo's objection and with its motion to reconsider. This court sees no reason why Cooke should certify copies of its affidavit separately from or independently of the other pleadings.[11] It is immaterial, in this court's view, whether a copy of the affidavit was sent as an attachment or "affidavit." The record shows that copies of the affidavit and of the other pleadings were certified together to all parties of record prior to the issuance of the further supplemental judgment. For all practical purposes, this court finds that Cooke cured its initial error.
It may be true that DiNardo was, in his own words, "unfairly surprised" by the late notice of Cooke's claim, but there is no evidence that he was "prejudiced" by the late notice. He obviously knew that Cooke's mortgage was immediately ahead of his in the list of priorities, based on the land records and the list of encumbrancers contained in the complaint and all the pleadings filed by the other parties and certified to him. It is not disputed that that he, as well as the other parties, became aware of Cooke's claim and received copies of its affidavit certified with other pleadings before he submitted an amended motion for supplemental judgment and before the court issued its further supplemental decision. In the draft of further supplemental judgment, accompanying DiNardo's amended motion filed on May 5, 2000, DiNardo put a dollar amount of $13,302.08 in handwriting beside Cooke's entry in the list of encumbrancers and acknowledged in a handwritten footnote that Cooke claimed the amount "[i]n accordance with affidavit filed on or about October 29, 1999."[12] He contested the admissibility of Cooke's affidavit precisely because he had been notified of its claim. His claim of prejudice is solely based on the claim of surprise. There is no evidence that he suffered any actual prejudice or that Cooke gained any unfair advantage because of the belated certification. It is not disputed that but for the court's decision sustaining his objection he would not recover any money from the funds. CT Page 1673
The further supplemental judgment has the effect of depriving Cooke of a real opportunity to recover its mortgage interest because of a procedural mishap that had caused no actual prejudice to any party.[13]
It "would work a manifest injustice if followed." Carothers v.Capozziello, 215 Conn. 82, 107, 574 A.2d 1268 (1990). There is, therefore, a "good and compelling" reason to open the judgment. SeeHirtle v. Hirtle, supra, 217 Conn. 398; Steve Vigilone Sheet Metal Co.v. Sakonchick, supra, 190 Conn. 710-11. Accordingly, this court, which has the inherent power to open, correct, modify or vacate a judgment, exercises the discretion to open the further supplemental judgment in the interest of justice. See Carothers v. Capozziello, supra, 215 Conn. 107;TLC Development, Inc. v. Planning and Zoning Committee, supra,215 Conn. 533-34; Hirtle v. Hirtle, supra, 217 Conn. 398.
Cooke's motion to open the further supplemental judgment and its motion to reargue priorities are hereby granted.
HICKEY, J.