[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant father has filed a motion to modify seeking a decrease in the support order. The defendant claims, inter alia, that the oldest child has reached majority since the entry of the last order; that the income of the plaintiff mother has increased substantially; that the medical expenses have been reduced since the date of the order; and that the order deviates substantially from the child support guidelines.
The motion was filed in January 2001, with an initial hearing date in March. The defendant resides in Washington State and claims to be totally disabled. Accordingly, as was done in the past, the matter was set down for a telephonic hearing telephonically as provided by General Statutes § 46b-213a(f) and also in compliance with the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., 12132;28 C.F.R. § 35.160; see also Conn. Const. amend. XXI; Daly v.DelPonte, 225 Conn. 499, 512-18, 624 A.2d 876 (1993); Galloway v.Superior Court of District of Columbia, 816 F. Sup. 12, 19 (D.D.C. 1993). The court issued pretrial orders for telephonic hearing intended to effectuate exchange of financial affidavits and disclosure in advance of the hearing. Neither party fully complied[1]. After several scheduling delays the matter was heard on June 9, 2001. CT Page 12798
The plaintiff mother and defendant father intermarried on July 31, 1982 in Yakima, Washington. There are three children issue of the marriage: Kristina, born August 7, 1981; James, born February 25, 1984; and Jonathan, born March 20, 1987.
The marriage was dissolved by our Superior Court at Meriden on August 5, 1992. The court, Stengel, J., granted sole custody of the children to the plaintiff mother, denied visitation to the father, and ordered, inter alia, that he pay $250.00 per week in unallocated child support, provide medical insurance and share equally all unreimbursed medical and dental bills. The defendant was also ordered to pay $20.00 per week on a past due arrearage of $8,563.00.
In July 1993, apparently at the request of the defendant, the State filed a revue and adjustment motion to modify seeking a decrease in the order. However, the motion was not pursued and was marked off. It was not reclaimed during the permissible time period. The court did make an arrearage finding of $22,850.00 as of October 27, 1992 "to the State of Connecticut and petitioner as their interests may appear.
In December 1998, the State again commenced a review and adjustment motion seeking a downward modification of the support order. The proceedings on this motion were, in a word, contentious. The defendant's request for a telephonic hearing was opposed and itself engendered a contested hearing. Ultimately the court transferred the case to New Britain, ordered a telephonic hearing, and issued pre-trial orders. As is the case presently, the parties failed to fully comply with the pre-trial orders. Nonetheless the court, Burt F.S.M went forward with a contested telephonic hearing.
The court rendered a written decision on that motion reported as Easleyv. Easley (1), 13 S.M.D. 92 (1999). It is that order that forms the basis for comparison in evaluating the present motion. "In determining whether there is a substantial change in circumstances, the court considers all evidence back to the most recent court order." Borkowski v. Borkowsk,228 Conn. 729, 741, 638 A.2d 1060 (1994); Danford v. Symonds,
12 S.M.D. 32, 34 (1998); Swain v. Swain, 10 S.M.D. 140, 142 (1996);Thomas v. Thomas, 8 S.M.D. 196, 198 (1994).
The 1999 court granted the motion and computed child support guidelines based on income findings in the opinion. It found that the defendant was disabled and received a social security disability award, as did the children. These factors were included in the guidelines calculation in accordance with Jenkins v. Jenkins, 243 Conn. 584, 704 A.2d 231 (1998). The court denied the plaintiff's request for a deviation based on CT Page 12799 additional earning capacity of the father. The plaintiff's claim was based on two unpublished books of the defendant and his ability to produce income-generating writings. The court found that the evidence was insufficient to support the deviation request. Easley v. Easley (1),
supra, 13 S.M.D. 93. However the court did grant an upward deviation for extraordinary medical expenses pursuant to Regs., Conn. State Agencies § 46b-215a-3(b)(2)(B). The court ordered as a deviation $60.00 per week unallocated support in addition to the social security dependency benefits payable directly to the children plus $12.00 per week on the arrearage. Easley v. Easley (1), supra, 13 S.M.D. 95.
The acrimony of the parties toward each other made it difficult to conduct a coherent hearing even by telephonic means[2]. The defendant claimed a substantial change of circumstances based on three grounds. He claims that his daughter Kristina has reached majority entitling him to modification of the unallocated support order. He claims a substantial increase in his former wife's income. Finally, he claims a significant decrease in the extraordinary medical expenses that form the basis of the deviation granted in the previous modification. The plaintiff opposes the motion. She denies that there has been any substantial change in the financial circumstances of either party, or that there has been a substantial decrease in the extraordinary medical expenses of the children. While she concedes that Kristina has come of age, she argues that Kristina continues to reside in her home, is a student, and continues on her medical insurance. Therefore, she argues, the support order should continue to include Kristina.
The burden of proof is on the party seeking the modification. Connollyv. Connolly 191 Conn. 468, 473, 464 A.2d 837 (1983); Kaplan v. Kaplan,185 Conn. 42, 46, 440 A.2d 252 (1981); Richard v. Richard,23 Conn. App. 58, 63, 579 A.2d 110 (1990); Mansfield v. Haynes,
12 S.M.D. 51, 52 (1998); Moffit v. Moffii 12 S.M.D. 41, 42 (1998); Danfordv. Symonds, 12 S.M.D. 32, 33 (1998); Murray v. Stone, 11 S.M.D. 149, 150 (1997); O'Dell v. O'Dell, 9 S.M.D. 7 (1995); Meyer v. Meyer,
7 S.M.D. 49, 52 (1993); Taylor v. Taylor 7 S.M.D. 43, 44 (1993); Yochum v.Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 32 (1992);Berluti v. Berluti, 5 S.M.D. 377, 381 (1991); Dubitzky v. Dubitzky,
5 S.M.D. 261, 271 (1991); Monahan v. Monahan, 4 S.M.D. 223, 227 (1990).
The moving party must demonstrate "that continued operation of the original order would be unfair or improper." McGuinness v. McGuinness,185 Conn. 7, 10, 440 A.2d 804 (1981); Noce v. Noce, 181 Conn. 145, 149,434 A.2d 345 (1980); Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129
(1985); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Moffit v. Moffit,
12 S.M.D. 41, 42 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998);Murray v. Stone, 11 S.M.D. 149, 151 (1997); Kimery v. Kimery 9 S.M.D. CT Page 12800 54, 57 (1995); Taylor v. Taylor, 7 S.M.D. 43, 45 (1993); Yochum v.Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 33 (1992);Kraynak v. Godfrey, 5 S.M.D. 250, 251 (1991); Romaniello v. Romaniello,
5 S.M.D. 87, 91 (1991). "The party seeking modification must clearly and definitely show individual facts and circumstances which have substantially changed." McGuinness v. McGuinness, 185 Conn. 7, 10,440 A.2d 804 (1981).
Since 1972 the age of majority in this State is eighteen. General Statutes § 1-1d. Connecticut law provides that support obligations cease by operation of law when a child reaches majority. Hunter v.Hunter, 177 Conn. 327, 416 A.2d 1201 (1979); Kennedy v. Kennedy,177 Conn. 47, 411 A.2d 25 (1979); Sillman v. Sillman, 168 Conn. 144,148-151, 358 A.2d 150 (1975); Gaudette v. Gaudette, 10 S.M.D. 213, 215 (1996); Johnson v. Johnson (II), 5 S.M.D. 144, 155 (1991). There are two exceptions to this rule. General Statutes § 46b-66 allows the court to order and enforce post-majority support pursuant to a written agreement of the parties. Hirtle v. Hirtle, 217 Conn. 394, 399,586 A.2d 578 (1991); Albrecht v. Albrecht, 19 Conn. App. 146, 562 A.2d 528
(1989), cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). Secondly, General Statutes § 46b-84(b) extends the support obligation for an "unmarried child of the marriage" who is a full-time high school student residing in the home of a parent to age nineteen or completion of the twelfth grade, whichever first occurs. However, this provision is specifically limited to "cases where the decree of dissolution of marriage, legal separation or annulment is entered on or after July 1, 1994."
In the present case, there is no written agreement providing for post-majority support. The decree of dissolution of marriage entered well before July 1, 1994. The court has no jurisdiction to extend child support beyond the age of eighteen. Furthermore, since Kristina is over eighteen, there is a substantial change of circumstances and the defendant is entitled to a modification of the support order on this basis alone. The remaining issues raised by the defendant will be discussed below in establishing the new support order.
The child support guidelines require the court to first determine the presumptive support order prior to applying any deviation criteria. Regs., Conn. State Agencies § 46b-215a-3-(a); Arias v. Macedo,
14 S.M.D. 287, 6 Conn.Ops. 1335,2000 Ct. Sup. 12916 (2000). Both parties did eventually file sworn financial affidavits. Although both parties had a propensity to attack the credibility of their opponent affidavits, the court finds them essentially credible[3]. The support enforcement division, after making a few adjustments[4], was able to complete and file a guidelines worksheet. The court finds the guidelines computation CT Page 12801 substantially correct and incorporates it as findings of this court. Specifically, the court finds the plaintiff mother's gross income to be $825.60 per week with an average weekly net of $609.00. The defendant's income is found to be $364.00 per week gross and net. The guidelines yield a presumptive support obligation of $110.00 per week before application of the social security adjustment. The guidelines provide for an adjustment on line 20 of the worksheet that amounts to a credit for the social security dependency benefits paid on behalf of the children. Regs., Conn. State Agencies § 46b-215a-2a(c)(6). This would therefore yield a zero payable order.
The court has already noted that the previous order included a deviation for extraordinary medical expenses. Since Kristina has reached majority, any portion of the deviation that to her medical expenses are no longer applicable, because she has reached majority. Those that applied to Jonathan and James are still pertinent.
James suffers from asthma. He uses a nebulizer incurs expenses for certain treatments. There are some prescription expenses. However, the plaintiff concedes that the unreimbursed medical expenses for James are not extraordinary as contemplated by the deviation criteria. Transcript, June 8, 2001 (hereinafter "T"), 29-30.
The plaintiff contends that medical costs for the youngest son, Jonathan, are continuing, expensive and extraordinary. A review of the file, written decision and transcript make clear that Jonathan's medical expenses were the primary factor supporting the deviation granted in 1999 by Family Support Magistrate Burt. The plaintiff claims that none of Jonathan's medical requirements or the expense of them have substantially changed since 1999. The defendant disputes this.
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weigh their testimony and that of the documentary evidence. Powers v. Olson, 252 Conn. 989, 105, 742 A.2d 799
(2000); Leo v. Leo, 197 Conn. 1, 4, 495 A.2d 704 (1985); Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799
(1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 1005 (1979); Raiav. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Shearn v. Shearn,50 Conn. App. 225, 231, 717 A.2d 793 (1998); Mansfield v. Haynes,
12 S.M.D. 51, 52 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998); Kimeryv. Kimery, 9 S.M.D. 54, 57 (1995); O'Dell v. O'Dell, 9 S.M.D. 7, 8 (1995); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v.Fretina, 5 S.M.D. 139, 142 (1991). The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake,190 Conn. 631, 639, 461 A.2d 1375 (1983); Rood v. Russo, 161 Conn. 1, 3,283 A.2d 220 (1971); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991). CT Page 12802
The defendant claims that the extraordinary medical expenses claimed by the plaintiff are unreasonable. T, 28. Jonathan, is a type I diabetic dependent on insulin. In lieu of multiple daily insulin shots, Jonathan is on an insulin pump. The defendant objects to this: "Again, I know from the infusions that's an expensive alternative to individual injection therapy and, in fact, she's spending money that I did not authorize and I object to that and can not afford it. . . ." T, 36.
Jonathan was on an insulin pump at the time of the last modification and this was one of the extraordinary medical expenses considered by Family Support Magistrate Burt at that time. Therefore, there has really been no change relative to Jonathan unless the defendant, who is present moving party, can prove that such treatment is no longer reasonable. The plaintiff claims that the insulin pump is not only reasonable, but necessary because Jonathan is a "brittle" diabetic, prone to significant swings in his blood sugar level and subject to frequent hypoglycemia ("insulin reaction" or "insulin shock"). T, 29, 30, 37-39.
Medical literature supports the plaintiff. The Diabetes Control and Complications Trial (DCCT) established that intensive insulin therapy can improve control of blood glucose levels and thereby delay and reduce long-term complications of type 1 diabetes. Diabetes Control and Complications Trial Research Group, "The effect of intensive treatment of diabetes on the development and progression of long-term complications to insulin-dependent diabetes mellitus", 329 N.Engl.J.Med. 977 (1993); Diabetes Control and Complications Trial Research Group, "Implementation of treatment protocols in the Diabetes Control and Complications Trial", 18 Diabetes Care 361 (1995); P. Reichard, B-Y. Nilsson, U. Rosenqvist, "The effect of long-term intensified insulin treatment on the development of microvascular complications of diabetes mellitus", 329 N.Engl.J.Med. 304 (1993). Intensive therapy in the manner recommended by the DCCT involves either multiple daily injections of insulin or alternatively insulin pump therapy, also known as continuous subcutaneous insulin infusion.
Studies have shown that for all patients, the insulin pump provides more predictable insulin absorption than multiple daily injections. B. Bode, R.D. Steed, P.C. Davidson, "Reduction in Severe Hypoglycemia with Long-term Continuous Subcutaneous Insulin Infusion in Type 1 Diabetes", 19 Diabetes Care 324 (1996) (internal citations omitted). For adults already achieving good glycemic control with injections, the level of control did not change significantly by switching to an insulin pump. Id., 325. However, for patients who had unacceptable glycemic control experienced improvement by changeover to continuous infusion. Id. Moreover, there was an overall marked decrease in severe hypoglycemia CT Page 12803 with infusion therapy. Id., 325-326 (internal citations omitted).
With adolescents, studies show those using the insulin pump find coping with diabetes to be less difficult than those on multiple injections. Furthermore, adolescents utilizing the insulin pump exhibit significantly lower sustained blood sugar levels while reducing the rate of severe hypoglycemic events by almost 50%. E.A. Boland, M. Grey, A. Oesterle, L. Fredrickson, W.V. Tamborlane, "Continuous subcutaneous insulin infusion. A new way to lower risk of severe hypoglycemia, improve metabolic control, and enhance coping in adolescents with type 1 diabetes" 22 Diabetes Care 1779 (1999).
The plaintiff is not bound to prove the superiority of the insulin pump for Jonathan. It is only necessary that this be demonstrably a reasonable medical decision. Jonathan is an adolescent, brittle diabetic who has a history of suffering severe hypoglycemic episodes. He is precisely the type of patient the medical literature suggests as the most favorable candidate for continuous infusion. If this is his physician's recommendation, the defendant clearly has no basis to object.
Furthermore, one of the defendant's claims actually undercuts his argument. He stated twice at the hearing that Jonathan's troubles are in part because "he didn't take his medication." T, 30, 37. Hypoglycemia, or low blood sugar, is not caused by a failure to take insulin. Rather, it is usually the result of overestimating the amount of insulin injected, underestimating the amount of food at a meal, or simply "brittleness" or instability of the patient's blood chemistry. Endocrinologists suggest that such a history favors, rather than contraindicates, insulin pump therapy. Even if Mr. Easley were correct that "failure to take medication" was a problem, clearly continuous infusion would minimize this compared to multiple injections.
Accordingly, the court finds that Jonathan extraordinary medical costs continue to warrant an upward deviation pursuant to Regs., Conn. State Agencies § 46b-215a-3-(b)(2)(B). The plaintiff and the State request that in determining the amount and form of the deviation, the court take one additional factor into consideration. Since the inception of the support order, the defendant has been ordered to provide medical insurance for the children and to share equally in the unreimbursed medical costs. Both Connecticut's support enforcement division and their Washington State counterparts have found it impossible to enforce these orders. In actuality, the plaintiff has provided the medical insurance and has shouldered the burden of 20% co-pays. T, 26-28, 40. The court is persuaded that the children and the parties would be better served by including in the deviation elimination of any additional medical cost obligation by Mr. Easley in return for inclusion of an appropriate CT Page 12804 contribution within the support order.
The court will make one additional deviation, and that is it will eschew the computation provided in Regs., Conn. State Agencies § 46b-215a-2a(c)(6). Instead, the court will enter the new support order expressed without the deduction for the social security paid to the family and direct that the support enforcement division automatically credit each month's dependent's payment. The support enforcement division may assume payments at the present level unless informed by either party or the Social Security Administration that the amount of the benefit has changed.[5] The court takes this step to assure a consistent amount of support for the children[6].
In determining the appropriate support order the Court has considered all of the factors set forth in General Statutes § 46b-84(d) and the child support guidelines. Based on those factors and the deviation stated, the court orders the defendant to pay $155.00 per week in current support. He is to be credited with the dependent's benefit direct payments against this amount. Additionally, he is to pay $20.00 per week on the arrearage. Support enforcement is directed to calculate the remaining payable amount, adjust the income withholding order accordingly, and notify the parties of the resulting calculations. The order is retroactive to January 29, 2001, the date that abode service of the motion was made upon the plaintiff in compliance with General Statutes § 52-50.
The motion to modify is granted. The support order is modified to $155.00 per week unallocated for the two remaining minor children plus $20.00 per week on the arrearage, subject to credit for the monthly social security payment for the children. The medical orders are modified so that the plaintiff mother is ordered to continue to maintain medical and dental insurance for the minor children and to pay all unreimbursed or uninsured medical or dental costs. Immediate income withholding is ordered. These orders are effective January 29, 2001. All other prior orders remain in effect.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate