## RHONDA F. MINER *v.* CHRISTOPHER A. MINER
### (AC 16786)

Lavery, Sullivan and Dupont, Js.

Argued January 22—officially released April 14, 1998

*Richard D. Dixon*, for the appellant (defendant).

*Stephen E. Reck*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The dispositive issue in this appeal from the judgment of the trial court dismissing on jurisdictional grounds the defendant's motion for modification of child support is whether the trial court has jurisdiction to modify a valid postmajority support order absent a written agreement by the parties giving it the power to modify. We hold that it does not and affirm the trial court's judgment.

The pertinent facts, which are not in dispute, are as follows. The parties' marriage was dissolved in 1984. A

separation agreement was entered into at that time and incorporated into the judgment. It provided for the college education of the two minor children as follows: "The [defendant] agrees to pay an amount equal to the then existing rates for books, fees and tuition at the University of Connecticut for resident students for four years of college education for each of the two minor children of the parties, and the parties shall equally pay the cost of room and board." In August, 1996, the defendant moved to open the judgment for the purpose of modifying the postmajority education provisions and to reexamine the proportion of expenses to be paid by the defendant and the plaintiff. The defendant claimed a substantial change in his economic circumstances and earnings, and a substantial change in the relative earnings of the plaintiff and the defendant. In his claim for relief, the defendant asked for an order reallocating the proportion of expenses. There is no written agreement allowing modification of the college expenses clause of the separation agreement. The trial court ruled that in accordance with General Statutes § 46b-66,[1] it lacked jurisdiction to modify postmajority support where there is no written agreement to modify.

---

[1] General Statutes § 46b-66 provides: "In any case under this chapter where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances and custody as the circumstances require. If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d."

The court relied on *Hirtle* v. *Hirtle*, 217 Conn. 394, 399, 586 A.2d 578 (1991), and *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 154–55, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). After the defendant's motion to reargue was granted, the trial court affirmed its prior ruling.

In 1977, "[t]he legislature amended General Statutes § 46b-66 (then § 46-49) in order to provide for the support of postmajority children only if there is an agreement to do so and if it is in writing. Public Acts 1977, No. 77-488, § 1. The legislative history of the amendment makes it clear that such is the case. The purpose of the amendment was to ensure that a written agreement involving support for adult children and submitted to the court by the parties in connection with an action for a dissolution of marriage could be incorporated into the judgment or orders of the court, thereby making such orders enforceable through contempt proceedings. 20 H.R. Proc., Pt. 8, 1977 Sess., pp. 3022–25; 20 H.R. Proc., Pt. 13, 1977 Sess., pp. 5591–92; 20 S. Proc., Pt. 8, 1977 Sess., pp. 3013–14. The legislature recognized that although a contract for the support of adult children might be enforceable by instituting a separate action for the enforcement of that contract, such a suit would require a lengthier time for resolution and that the agreement could not be enforced by contempt proceedings." *Arseniadis* v. *Arseniadis*, 2 Conn. App. 239, 244–45, 477 A.2d 152 (1984).

The defendant claims that since there is a valid written agreement of postmajority support and education properly incorporated into the judgment of dissolution and the agreement is silent as to any conditions on which it may be modified, then General Statutes §§ 46b-66 and 46b-86[2] provide continuing jurisdiction for the

---

[2] General Statutes § 46b-86 (a) provides: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente

court to open and modify postmajority support. The defendant relies on *Barnard* v. *Barnard*, 214 Conn. 99, 570 A.2d 690 (1990), to substantiate his claim and seeks to distinguish *Hirtle* v. *Hirtle*, supra, 217 Conn. 394, and *Albrecht* v. *Albrecht*, supra, 19 Conn. App. 146, which the trial court relied on in its decision.

The defendant relies on the following language in *Barnard* to substantiate his position. "The jurisdiction of the Superior Court as it relates to postmajority child support derives solely from . . . § 46b-66. . . . Such jurisdiction is limited to the power to approve and incorporate written agreements concerning such support into its orders or decrees and to enforce such written

lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. After the date of judgment, modification of any child support order issued before or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50."

agreements. . . . Agreements between parties regarding the postmajority education of children are required to be in writing. . . . Once the provisions of a separation agreement, including provisions for the postmajority education of children, are incorporated into the dissolution judgment, they can be modified by court order *only if the agreement so incorporated does not preclude modification.* . . . General Statutes § 46b-86 (a) provides in part that [u]nless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be . . . modified by a showing of a substantial change in the circumstances of either party." (Citations omitted; emphasis added; internal quotation marks omitted.) *Barnard* v. *Barnard,* supra, 214 Conn. 113–14.

The language emphasized is dictum and not the holding of the *Barnard* case. In *Barnard,* the written agreement providing for postmajority college education contained a specific provision authorizing modification of postmajority college education and support. The Supreme Court held in *Barnard* that "the parties clearly intended that the provisions of paragraph 3.9 apply to all of Article III, as it plainly provided in its introductory language: In the event that the parties cannot agree upon the Husband's obligations or abilities under this Article III, either party may petition the Superior Court . . . . The words used by the parties must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract. . . . This can easily be done in the present case. It is correct that paragraph 3.10 contains no language that imposes any condition upon the defendant's ability to pay or even expressly mentions his ability to pay. It is clear, however, that simply because the plaintiff has remarried and the defendant is thereby relieved of making further alimony payments he will always, for as long

as required to do so by the agreement, nevertheless, be financially obligated to meet the costs of the education of the Barnard children. If the parties intended to make paragraph 3.9 inapplicable to paragraph 3.10, the agreement should have so stated; it did not, and, hence, paragraph 3.10, as well as the balance of Article III, is subject to paragraph 3.9. Where parties have their agreement in writing their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained. . . . Accepting the plaintiff's claim here would render the plain language of paragraph 3.9 meaningless as to paragraph 3.10. Parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible. . . . Paragraph 3.9 is not clearly meaningless as it relates to paragraph 3.10. Therefore, the defendant's obligations under paragraph 3.10 are subject to modification and the court erred in concluding otherwise.

"It was, therefore, error for the trial court to conclude that the defendant's obligations or abilities to pay postmajority education costs for the Barnard children under paragraph 3.10 were not subject to modification under the dissolution decree." (Citations omitted; internal quotation marks omitted.) *Barnard* v. *Barnard*, supra, 214 Conn. 115–17.

It is clear from the language of *Barnard* that the Supreme Court based its analysis and holding on the interpretation of the contractual language of the written agreement incorporated into the dissolution decree and that said agreement gave the court the power to modify the postmajority college education and support provisions of said decree.

In *Albrecht* v. *Albrecht*, supra, 19 Conn. App. 146, there was a provision in the written separation agreement that was incorporated by reference into the

dissolution decree that provided that any modification of the terms of the agreement was required to be in writing. This provision was the basis of this court's upholding the denial of the plaintiff's claim that an oral agreement of the modification was a defense to the defendant's motion to hold the plaintiff in contempt for failure to pay postmajority education expenses. This court, however, in upholding the trial court's granting of the defendant's motion to dismiss the plaintiff's motion to modify the terms of the postmajority college and professional education clause, held, without referring to the lack of written agreement provision in the separation agreement, that the trial court does not have the jurisdiction pursuant to § 46b-86 to modify, without a written agreement of both parties, a postmajority child support order entered pursuant to § 46b-66. This court reasoned: "[Section] 46b-86 provides that the trial court may modify final orders for payment of alimony or support upon a showing of a substantial change in the circumstances of either party. The plaintiff argues that the power granted by § 46b-66 to enforce written agreements concerning postmajority child support includes the power to modify such agreements pursuant to § 46b-86. His argument rests on the proposition that because § 46b-86 (a), governing modifications of alimony, support orders and judgments, states that 'any final order' may be modified upon a showing of a substantial change in the circumstances of either party, the statute must permit modification of postmajority child support orders.

"The terms of § 46b-86 (a) cannot be expanded to include matters beyond the court's jurisdiction. 'Any' does not include all possible or hypothetical orders but only those orders that the court has the power to formulate. The jurisdiction of the Superior Court as it relates to postmajority child support derives solely from § 46b-66. . . . Pursuant to § 46b-66, the court has the

limited power to accept, incorporate and enforce a written agreement of child support that extends beyond a child's age of majority. . . .

"Public Acts 1977, No. 77-488, § 1, had the limited purpose of permitting a contract for the support of adult children to be incorporated into a judgment or order of the court, thereby making such orders enforceable through contempt proceedings, rather than requiring that such a contract be enforced through a separate contract action. . . . The act did not grant the trial court the power to fashion or enforce its own orders concerning postmajority child support. It did grant the court a limited power of veto over the parties' agreement to provide such support, to be exercised only if the agreement were not 'fair or equitable.'

"A parent's obligation to support his or her children exists only until the age of majority. General Statutes § 46b-84. The court cannot, without the consent of both parents, alter a voluntary obligation undertaken by a parent beyond his or her legal obligation. . . . To accept the plaintiff's contention that the trial court has jurisdiction to modify postmajority child support agreements pursuant to § 46b-86 would be to conclude that the trial court has greater power during a modification proceeding than it had during the original dissolution proceeding." (Citations omitted.) *Albrecht* v. *Albrecht,* supra, 19 Conn. App. 155–57.

In *Hirtle* v. *Hirtle,* supra, 217 Conn. 394, the plaintiff contended that the trial court has the jurisdiction to modify an agreement for postmajority support even where the parties have not agreed in writing to such a modification. The Supreme Court, in upholding the trial court's determination that § 46b-66 requires such modifications to be written, stated: "Although General Statutes § 46b-86 (a) confers authority upon the Superior Court to modify 'any final order' for the payment of

support, that authority must be read in conjunction with the jurisdictional limitations imposed by § 46b-66. As the Appellate Court held in *Albrecht* v. *Albrecht,* supra, [19 Conn. App.] 155–57, the same jurisdictional rules apply to the incorporation of an order for postmajority support in the original dissolution proceedings as to a subsequent order modifying postmajority support. In both cases, § 46b-66 requires a written agreement of the parties.

"The decision of this court in *Barnard* v. *Barnard,* [supra, 214 Conn. 115], does not compel a different conclusion. In that case, the issue was whether, as § 46b-86 (a) expressly permits, the parties had effectively precluded any subsequent modification of postmajority support by the terms of the separation agreement that had been incorporated into the decree dissolving their marriage. In that context, we noted that the postmajority support order could be judicially modified 'only if the agreement so incorporated does not preclude modification.' Id., 114. Our repeated citations of *Albrecht* v. *Albrecht,* supra, [19 Conn. App. 155–57], indicate that we did not intend to foreclose the consideration of other constraints on the validity of a modification of a postmajority support order. *Barnard* v. *Barnard,* supra, 113–14. We therefore concur with the Appellate Court in *Albrecht* v. *Albrecht,* supra, [155–57] and with the trial court in this case, that a written agreement is a jurisdictional prerequisite to the valid modification of an order for postmajority support." *Hirtle* v. *Hirtle,* supra, 217 Conn. 400–401.

In this case, the defendant seeks not only to modify his obligation, but to alter the plaintiff's obligation by asking the trial court to reallocate the proportion of expenses to be paid by the plaintiff and the defendant. It is clear from the cases cited that the trial court had

no jurisdiction to modify the written agreement incorporated in the dissolution decree as it pertains to post-majority support and education without a written agreement signed by both parties giving the court the authority to modify the agreement or by the parties themselves modifying the agreement.

The judgment is affirmed.

In this opinion the other judges concurred.