### JOHN O'BRYAN *v.* JANET O'BRYAN
### (AC 20825)

Foti, Landau and Dranginis, Js.

Submitted on briefs September 12—officially released November 20, 2001

*Douglas A. Miller, Jr.,* filed a brief for the appellant (defendant).

*Brenden P. Leydon* and *Gary Oberst* filed a brief for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendant, Janet O'Bryan, appeals from the judgment of the trial court granting the motion of the plaintiff, John O'Bryan, for modification of child support. On appeal, the defendant claims that the court lacked jurisdiction to modify support for the parties' postmajority child. We reverse the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of this appeal. On October 18, 1991, the parties entered into a separation agreement. On January 3, 1992, the court rendered a judgment of dissolution of the parties' marriage that incorporated the parties' separation agreement. In accordance with the separation agreement, the court awarded the parties joint legal custody of their two minor children. The defendant was granted physical custody with reasonable visitation in the plaintiff. The agreement provided in relevant part that the plaintiff would pay child support until the end of 2006, when the children would be ages twenty-seven and twenty-one, respectively.

On December 14, 1999, the plaintiff filed a motion to modify his child support payments by directing a portion of the support directly to the older child, who was then twenty and living independently. On February 14, 2000, the defendant filed a motion for modification seeking to increase child support due to a substantial change in circumstances, namely, an increase in the plaintiff's income. On April 10, 2000, the court granted both motions for modification. The court ordered that child support be increased by 20 percent and that 50 percent of the child support payment be paid directly to the older child and the other 50 percent to the defendant. This appeal followed.

The defendant argues that the court improperly modified the plaintiff's obligation to pay postmajority child support because the parties did not have a written agreement that provided that the court could modify postmajority child support as required by General Statutes § 46b-66. We agree.

At the outset, we note that the defendant's argument equates the court's jurisdiction with the court's authority to act; however, our Supreme Court clarified the distinction between a trial court's "jurisdiction" and its "authority to act" under a particular statute in *Amodio* v. *Amodio*, 247 Conn. 724, 727, 724 A.2d 1084 (1999). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring juris-

diction should be indulged." (Citations omitted; internal quotation marks omitted.) Id., 727–28.

"Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) Id., 728.

General Statutes § 46b-1 provides the Superior Court with plenary and general subject matter jurisdiction over legal disputes in "family relations matters," including custody and support. Section 46b-66 provides the court with jurisdiction to incorporate a separation agreement into its order or decree if on review it finds the agreement fair and equitable under the circumstances. Section 46b-66 further provides that "[i]f the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order *and shall be enforceable to the same extent as any other provision of such order or decree* . . . ." (Emphasis added.) Sections 46b-1 and 46b-66 provided the trial court with subject matter jurisdiction over the plaintiff's modification claim in this case. See *Amodio* v. *Amodio*, supra, 247 Conn. 729–30.

Having concluded that the court had jurisdiction over the plaintiff's motion for modification of postmajority support, we must now turn to the question of whether the court properly applied § 46b-66, that is, properly exercised its statutory authority to act. We conclude that the court did not have authority to modify the plaintiff's postmajority support obligation.

Connecticut courts repeatedly have held that, pursuant to § 46b-66, a prerequisite to a court's modification of postmajority support is a written agreement provid-

ing for modification by the court, whether it is contained in a separation agreement that is then incorporated into the judgment of dissolution or exists as a separate agreement. See, e.g., *Hirtle* v. *Hirtle*, 217 Conn. 394, 399, 586 A.2d 578 (1991); *Miner* v. *Miner*, 48 Conn. App. 409, 411, 709 A.2d 605 (1998).

In the present case, the parties' separation agreement was incorporated by reference into the dissolution decree. "A judgment rendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract. . . . The construction of such an agreement by the trial court is subject to our review under the clearly erroneous standard. . . .

"A contract is to be construed as a whole and all relevant provisions will be considered together. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish. . . . The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. . . . This is so where the parties have their agreement in writing. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to

be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citations omitted; internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 109–10, 570 A.2d 690 (1990).

With these principles in mind, we turn to the trial court's conclusion that the parties' October 18, 1991 agreement provided for modification of child support of a postmajority child.

Article V of the parties' separation agreement addresses child support. Paragraph 5.1 provides that "[t]*he Husband shall pay to the Wife* as child support the following sums as and for child support for the time frame indicated . . . ." (Emphasis added.) That paragraph further provides that payments shall be made through 2006 and that those payments shall occur until the death of the plaintiff, the defendant or the child. The agreement contains no language that could be interpreted as permitting the court to modify the amount of postmajority support or to whom the postmajority support would be paid. Rather, paragraph 5.1 contained additional language, which the parties crossed out, stating that child support payments shall continue until "the emancipation of a child for a reason other than age. The Husband shall have the burden of proving such emancipation."

We conclude that the language of the agreement provides for support payments to be made directly to the defendant. It is evident, based on the excised language, that the parties anticipated the possibility that one or both of their children would become "emancipated" notwithstanding their age, but did not agree that the plaintiff's support obligations would be modifiable under such circumstances. Other provisions of the par-

ties' agreement also provide for modification of support by the court in certain defined circumstances.[1] If the parties wanted to allow the court to modify postmajority child support, they knew how to do so. The parties' agreement further provided, in article VII, paragraph 7.3: "Except as otherwise herein provided, a modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement . . . ." We conclude therefore that the court acted outside of its authority under § 46b-66 when it redirected the plaintiff's payments from the defendant to the child and increased postmajority support by 20 percent.

Article III, paragraph two, does not require a different result. That section provides: "In the event that a decree dissolving the marriage of the parties hereto, or a decree of divorce between the parties hereto, shall be entered in any court of competent jurisdiction, a subsequent modification by any court of competent jurisdiction of such decree shall, to the extent that it varies the terms of this agreement be deemed to amend this agreement in accordance with the terms of such modification." The trial court's reliance on article III in support of its modification of postmajority support would render the language of article VII meaningless. "Parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible." (Internal quotation marks omitted.) Id., 116.

The judgment is reversed and the case is remanded with direction to deny the motions for modification of child support.

In this opinion the other judges concurred.

---

[1] Article XI, titled "College Expenses," paragraph 11.3, provides in relevant part: "A substantial change in circumstances of the husband shall be deemed to be income of less than $125,000.00 per year. Thereafter, the court shall have the power, if it deems appropriate, to modify the obligations of this article."