DONNA FUSCO *v.* JOSEPH P. FUSCO, JR.
(SC 16945)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued September 8—officially released November 25, 2003

*Bernadette M. Keyes*, for the appellant (defendant).

*Glenn L. Formica*, with whom, on the brief, was *Daniel W. Adelman*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, C. J. The defendant, Joseph P. Fusco, Jr., appeals[1] from the ruling of the trial court dismissing his motion for modification of postmajority child support payments to the plaintiff, Donna Fusco. The defendant claims on appeal that the trial court improperly concluded that it did not have jurisdiction to hear the defendant's motion.[2] We reverse the judgment of the trial court.

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The defendant also claims that the trial court improperly dismissed the motion notwithstanding: (1) the child is no longer in need of support because she now holds a master's degree and is fully employed; and (2) the postmajority support payments should be treated as alimony because the child is no longer in need of support and because he has been making the payments directly to the plaintiff. The defendant did not raise these issues before the trial court because the trial court dismissed his claim. Accordingly, we decline to reach them. See Practice Book § 60-5; *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 168 n.9, 757 A.2d 14 (2000).

The record reveals the following relevant facts and procedural history. The plaintiff and the defendant were divorced on January 28, 1986. At the time of the dissolution, the parties had one minor child, Donna Marie Fusco, who suffered from chemical sensitivities. The parties agreed by stipulation that "[t]he defendant will pay to the plaintiff the sum of One Hundred Fifty ($150.00) Dollars per week alimony and Forty ($40.00) Dollars per week child support. . . . Said alimony payment shall continue until the death or remarriage of the plaintiff. In the event the plaintiff remarries, the defendant's obligation to pay the existing loan on the car, insurance, taxes, registration, and licensing fees on the plaintiff's vehicle, and renters insurance shall also cease. However, the weekly amount of child support shall be increased to at least One Hundred ($100.00) Dollars per week payable on the same basis as set forth above. This amount may not be modified downward, however, this agreement will not preclude the plaintiff from returning to court to seek an increase in the weekly child support order, the parties hereto agreeing that said amount is the minimum sum necessary to support the child. Any amounts payable as child support shall continue until the death or marriage of the child." This stipulation was incorporated into the judgment of dissolution.

On December 2, 1992, the trial court modified the order of child support upward from $40 to $200 per week to bring the amount closer to that recommended by the child support guidelines. On August 1, 1997, the trial court denied the defendant's motion to open the judgment and to modify downward the awards of child support, alimony and educational expenses. The daughter reached the age of majority on December 16, 1997. On October 19, 2001, the defendant filed a motion for modification of child support due to a substantial change in his circumstances. The parties agreed that

the motion would be decided on the briefs alone. On February 13, 2002, the court concluded pursuant to *Miner* v. *Miner*, 48 Conn. App. 409, 709 A.2d 605 (1998), that it did not have jurisdiction to hear the modification motion in the absence of a written agreement giving it power to modify the original postmajority child support order. Accordingly, the trial court dismissed the defendant's motion. The defendant appeals from the ruling of the trial court.

The defendant first claims that the trial court improperly concluded that it did not have jurisdiction to modify the postmajority support order. Although the parties have focused exclusively on the question of the trial court's subject matter jurisdiction, we conclude that this matter is not truly jurisdictional in nature, but involves the trial court's authority to act. We further conclude that the trial court had the authority to act on the defendant's motion.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Citation omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999). "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) Id., 728.

The difference between a court's authority to act and its subject matter jurisdiction in cases involving the modification of postmajority child support was considered by the Appellate Court in *O'Bryan* v. *O'Bryan*, 67

Conn. App. 51, 787 A.2d 15 (2001), aff'd, 262 Conn. 355, 813 A.2d 1001 (2003) (per curiam). In *O'Bryan*, the parties' separation agreement, incorporated into the judgment of dissolution, provided that the plaintiff would pay child support until the end of 2006, when the parties' minor children would be twenty-seven and twenty-one years of age, respectively. Id., 52. In 1999, the plaintiff filed a motion to modify his child support payments, seeking to direct a portion of the support payments directly to the older child, who was then twenty years of age and living independently. Id., 53. The defendant responded by filing a motion to modify the child support as well, seeking to have the payments increased due to the plaintiff's increase in income. Id. The court granted both motions. Id. The defendant appealed and argued that the court could not modify the award of child support without a written agreement between the parties allowing for modification. Id.

The Appellate Court, at the outset of its analysis, noted the distinction between a trial court's jurisdiction and its authority to act under a particular statute recognized by this court in *Amodio*. It concluded that General Statutes § 46b-1,[3] which provides the Superior Court with plenary and general subject matter jurisdiction over legal disputes in family relations matters, and General Statutes (Rev. to 1999) § 46b-66,[4] which provides

---

[3] General Statutes § 46b-1 provides in relevant part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (4) alimony, support, custody and change of name incident to dissolution of marriage, legal separation and annulment . . . ."

[4] General Statutes (Rev. to 1999) § 46b-66 provides in relevant part: "[I]f the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order *and shall be enforceable to the same extent as any other provision of such order or decree* . . . ." (Emphasis added.)

General Statutes § 46b-66 was amended in 2001; see Public Acts 2001, No. 01-135, §§ 1, 3; and currently provides additionally: "(b) Agreements providing for the care, education, maintenance or support of a child beyond

the court with jurisdiction to incorporate a separation agreement into its order or decree, provide the trial court with subject matter jurisdiction over motions for postmajority child support modification. *O'Bryan* v. *O'Bryan*, supra, 67 Conn. App. 54. The court then considered whether the trial court had the authority to grant the motions for modification of postmajority child support, considering the limitations put on such modifications by § 46b-66. Id., 54–56. It stated that "Connecticut courts repeatedly have held that, pursuant to § 46b-66, a prerequisite to a court's modification of postmajority support is a written agreement providing for modification by the court, whether it is contained in a separation agreement that is then incorporated into the judgment of dissolution or exists as a separate agreement. See, e.g., *Hirtle* v. *Hirtle*, 217 Conn. 394, 399, 586 A.2d 578 (1991); *Miner* v. *Miner*, [supra, 48 Conn. App. 411]." *O'Bryan* v. *O'Bryan*, supra, 54–55.

Consistent with the reasoning of *O'Bryan*, we conclude that the trial court had subject matter jurisdiction over the plaintiff's motion for modification of postmajority support, and we focus our analysis on whether the court had the authority to act on the motion pursuant to § 46b-66. The trial court declined to hear the defendant's motion because it found no evidence of a written agreement allowing the court to modify the postmajority child support. A close examination of the parties' stipulation convinces us otherwise.

The stipulation of the parties was incorporated by reference into the divorce decree. "A judgment rendered in accordance with such a stipulation is to be regarded and construed as a contract." *Barnard* v. *Bar-*

the age of eighteen entered into on or after July 1, 2001, shall be modifiable to the same extent as any other provision of any order or decree in accordance with section 46b-86." Subsection (b) is not applicable to the current case in which the stipulation providing for postmajority child support was entered into January 24, 1986.

*nard,* 214 Conn. 99, 109, 570 A.2d 690 (1990). "[T]he intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.,* 263 Conn. 178, 188–89, 819 A.2d 765 (2003).

"Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . ." (Internal quotation marks omitted.) *Levine* v. *Advest, Inc.,* 244 Conn. 732, 746, 714 A.2d 649 (1998). "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC,* 259 Conn. 665, 670, 791 A.2d 546 (2002).

In the present case, the stipulation unambiguously provided that the weekly child support payment could be modified. Specifically, it provided that "this agreement will not preclude the plaintiff from returning to court to seek an increase in the weekly child support order . . . ." When the trial court relies solely on the written agreement in ascertaining the intent of the par-

ties and the language of the agreement is clear and unambiguous, the court's determination of what the parties intended by their contractual commitments is a question of law over which our review is plenary. *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999). Accordingly, we conclude that the trial court's determination that there was no written agreement giving it the power to modify the child support order was incorrect.[5] Indeed, the phrase "[t]his amount may not be modified downward" demonstrates that a modification upward clearly was authorized.

Therefore, the next question is what the parties actually meant by that same phrase and whether a downward modification could ever be awarded. We first examine the relevant language of the stipulation in its entirety. The stipulation provided for $40 per week in child support. It further provided that, if the plaintiff remarries, "the weekly amount of child support shall be increased to at least One Hundred ($100.00) Dollars per week payable on the same basis as set forth above. *This amount* may not be modified downward, however, this agreement will not preclude the plaintiff from returning to court to seek an increase in the weekly child support order, the parties hereto agreeing that said amount is the minimum sum necessary to support the child. Any amounts payable as child support shall continue until the death or marriage of the child." (Emphasis added.)

The plaintiff argues that the phrase "[t]his amount" refers to whatever amount has been awarded as weekly child support and allows the upward modification of the child support above $40 or $100 per week, whichever is applicable, but expressly precludes any reduction. In

[5] In fairness to the trial court, we point out that the defendant never argued that the stipulation provided for modification of the postmajority support order, but argued only that the stipulation did not preclude modification.

turn, in the phrase "said amount is the minimum sum necessary to support the child," the words "said amount," which refer back to "[t]his amount," would mean whatever increased amount has been ordered. The stipulation, then, would operate as an elevator that only goes up.

We conclude that the phrase "the parties hereto agreeing that said amount is the minimum sum necessary to support the child" is most reasonably understood, however, as explaining why the "said amount" of $40 or $100, depending on whether the plaintiff had remarried, could not be modified downward, not as providing that any future increase over that amount would automatically become the "minimum sum necessary to support the child." Under this reading, the plaintiff would not be precluded from seeking an increase over the $40 or $100, but any such increase would be dependent solely on the defendant's ability to pay. If the parties agreed that the ability to pay would justify an increase in the weekly payment, however, it is only reasonable to assume that an inability to pay would justify a decrease, with the minimum necessary payment of $40 or $100 providing an absolute floor. Accordingly, we also conclude that there is no ambiguity as to whether downward modification may be awarded.

Under the plaintiff's reading, on the other hand, it follows logically that, to obtain an increase over the $40 or $100, she would have to establish that the increased amount was the "minimum sum necessary to support the child," and the defendant's ability to pay that amount could not be taken into account. This argument is inconsistent with the trial court's ruling in 1992, which increased the child support from $40 to $200 on the basis of the defendant's ability to pay, not the child's

needs.[6] We favor the more reasonable interpretation, which, in light of the ill health of the child, would obligate the defendant to pay $40 or $100 a week, depending on whether the plaintiff remarried, as the "minimum sum necessary to support the child," but would allow for modification provided it never be reduced below said baseline amount.

We conclude that the trial court's determination that the original stipulation of the parties did not include an agreement to allow for modification of postmajority child support was incorrect, and that the trial court had authority to modify the child support order, but not below the baseline amount of $40 or $100 per week, depending on whether the plaintiff remarried.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[6] The trial court used the child support guidelines, effective January, 1991, to calculate the child support owed by the defendant. The guidelines' calculation is based on the parties' income, and allows for deviations from the recommended amount. The trial court lowered the amount because the defendant had other dependents and was already paying his daughter's medical and school expenses.