[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The matter pending before this court is a motion to modify seeking a decrease in the support order filed by the State of Connecticut at the behest of the defendant father. The plaintiff mother and defendant father intermarried on July 2, 1975 in Providence, Rhode Island. There are three children issue of the marriage: Carlos, born June 11, 1974; Marco, born September 27, 1979; and Julio, born December, 1986. The defendant claims, inter alia, that his son Marco has reached majority since the entry of the last order[1]; and that the order deviates substantially from the child support guidelines. The defendant now lives in the State of Florida. Pursuant to General Statutes § 46b-213a (f) the hearing was conducted telephonically with the assistance of the Child Support office of the Florida Department of Revenue in Palm Beach County.
The Superior Court at Hartford dissolved the marriage on March 17, 1989. The court, Goldstein, J., granted sole custody of the children to the plaintiff mother, granted reasonable visitation to the father, and ordered, inter alia, that he pay $160.00 per week in unallocated child support, provide medical insurance and share equally all unreimbursed medical and dental bills. The terms of the judgment were substantially in accordance with a written separation agreement submitted by the parties.
Several contempt citations ensued in 1990. On December 4, 1990, by agreement, the court, Steinberg J., found an arrearage of $3,729.50, ordered an additional $10.00 per week payment on the arrearage and ordered immediate income withholding. The judgment has been modified regarding a qualified domestic relations order (QDRO), but there have been no modifications of the custody or child support orders. Thus it is the support order in the original judgment that forms the basis for comparison in evaluating the present motion. "In determining whether there is a substantial change in circumstances, the court considers all evidence back to the most recent court order." Borkowski v. Borkowski,228 Conn. 729, 741, 638 A.2d 1060 (1994); Easley v. Easley(II), 15 S.M.D. ___ (2001); Danford v. Symonds, 12 S.M.D. 32, 34 (1998); Swain v.Swain, 10 S.M.D. 140, 142 (1996); Thomas v. Thomas, 8 S.M.D. 196, 198 (1994).
The burden of proof is on the party seeking the modification. Connollyv. Connolly, 191 Conn. 468, 473, 464 A.2d 837 (1983); Kaplan v. Kaplan,185 Conn. 42, 46, 440 A.2d 252 (1981); Richard v. Richard,23 Conn. App. 58, 63, 579 A.2d 110 (1990); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Moffit v. Moffit, 12 S.M.D. 41, 42 (1998); Danfordv. Symonds, 12 S.M.D. 32, 33 (1998); Murray v. Stone, 11 S.M.D. 149, 150 (1997); O'Dell v. O'Dell, 9 S.M.D. 7 (1995); Meyer v. Meyer, 7 S.M.D. 49, 52 (1993); Taylor v. Taylor, 7 S.M.D. 43, 44 (1993); Yochum v.Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 32 (1992); CT Page 9791Berluti v. Berluti, 5 S.M.D. 377, 381 (1991); Dubitzky v. Dubitzky, 5 S.M.D. 261, 271 (1991); Monahan v. Monahan, 4 S.M.D. 223, 227 (1990).
The moving party must demonstrate "that continued operation of the original order would be unfair or improper." McGuinness v. McGuinness,185 Conn. 7, 10, 440 A.2d 804 (1981); Noce v. Noce, 181 Conn. 145, 149,434 A.2d 345 (1980); Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129
(1985); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Moffit v. Moffit, 12 S.M.D. 41, 42 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998);Murray v. Stone, 11 S.M.D. 149, 151 (1997); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Taylor v. Taylor, 7 S.M.D. 43, 45 (1993); Yochum v.Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 33 (1992);Kraynak v. Godfrey, 5 S.M.D. 250, 251 (1991); Romaniello v. Romaniello, 5 S.M.D. 87, 91 (1991). "The party seeking modification must clearly and definitely show individual facts and circumstances which have substantially changed." McGuinness v. McGuinness, 185 Conn. 7, 10,440 A.2d 804 (1981).
Since 1972 the age of majority in this State is eighteen. General Statutes § 1-1d. Connecticut law provides that support obligations cease by operation of law when a child reaches majority. Hunter v.Hunter, 177 Conn. 327, 416 A.2d 1201 (1979); Kennedy v. Kennedy,177 Conn. 47, 411 A.2d 25 (1979); Sillman v. Sillman, 168 Conn. 144,148-151, 358 A.2d 150 (1975); Gaudette v. Gaudette, 10 S.M.D. 213, 215 (1996); Johnson v. Johnson, (II), 5 S.M.D. 144, 155 (1991). There are two exceptions to this rule. General Statutes § 46b-66 allows the court to order and enforce post-majority support pursuant to a written agreement of the parties. Hirtle v. Hirtle, 217 Conn. 394, 399,586 A.2d 578 (1991); Albrecht v. Albrecht, 19 Conn. App. 146, 562 A.2d 528
(1989), cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). Secondly, General Statutes § 46b-84 (b) extends the support obligation for an "unmarried child of the marriage" who is a full-time high school student residing in the home of a parent to age nineteen or completion of the twelfth grade, whichever first occurs. However, this provision is specifically limited to "cases where the decree of dissolution of marriage, legal separation or annulment is entered on or after July 1, 1994."
"When a support order provides for unallocated child support for more than one child, the child support amount is not automatically subject to a pro rata reduction when one of the children reaches majority or otherwise emancipates. . . . The obligor, therefore, remains liable for the full amount of the order for the support of the remaining minor [child]. . . . If the obligor feels that the child support amount is excessive for the remaining minor [child], then the proper remedy is to file a motion to modify." Labrie v. Labrie, 16 S.M.D. ___, 32 Conn. L. CT Page 9792 Rptr. 222, 8 Conn. Ops. 713 (digest) (Baran, F.S.M., May 20, 2002); see also Delevett v. Delevett, 156 Conn. 1, 3-5, 238 A.2d 402 (1968);Gillespie v. Gillespie, 8 Conn. App. 382, 386-87, 512 A.2d 238 (1986).
In the present case, there is no written agreement providing for post-majority support. The decree of dissolution of marriage entered well before July 1, 1994. Although he delayed several years, the defendant has now filed a motion to modify. Since both Carlos and Marco are now over eighteen, there is a substantial change of circumstances and the defendant is entitled to a modification of the support order on this basis alone. The remaining issues raised by the parties will be discussed below in establishing the new support order.
The child support guidelines require the court to first determine the presumptive support order prior to applying any deviation criteria. Regs., Conn. State Agencies § 46b-215a-3(a); Arias v. Macedo, 14 S.M.D. 287, 6 Conn. Ops. 1335, 2000 Ct. Sup. 12916 (2000). The plaintiff mother filed a sworn financial affidavit which the court finds credible. Although the defendant did not file a financial affidavit, he did submit pages 7-10 of a UIFSA General Testimony statement, which was signed and sworn. This document substantially covers the information required to be disclosed on the financial affidavit albeit in a different format. The defendant did not submit any corroborating documentation such as income tax returns, business ledgers or the like. The support enforcement division, after making a few adjustments[2], was able to complete and file a guidelines worksheet. There were a few inconsistencies and inaccuracies but for purposes of determining the presumptive order under the child support guidelines, the court will accept the proffered figures. Specifically, the court finds the plaintiff mother's gross income to be $783.90 per week with an average weekly net of $552.00. The defendant's income is found to be $907.70 per week gross with a net of $629.70. The guidelines yield a presumptive support obligation of $132.49 per week.
The defendant argues that the presumptive order under the child support guidelines is much too high. He ascribes this to the failure of the computation to take into account that he has to make substantial lease payments on his cab, and must pay for incidental expenses such as gasoline and tolls. See Transcript, 15-18, 23-25. While it would have been better had the defendant articulated this claim in writing prior to the hearing and provided complete documentation both of his income and the alleged business expenses, it must be conceded that at least the cab rental is a usual and necessary business expense which must be taken into account.
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weigh their testimony and that of the CT Page 9793 documentary evidence. Powers v. Olson, 252 Conn. 989, 105, 742 A.2d 799
(2000); Leo v. Leo, 197 Conn. 1, 4, 495 A.2d 704 (1985); Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799
(1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 1005 (1979); Raiav. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Shearn v. Shearn,50 Conn. App. 225, 231, 717 A.2d 793 (1998); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998); Kimeryv. Kimery, 9 S.M.D. 54, 57 (1995); O'Dell v. O'Dell, 9 S.M.D. 7, 8 (1995); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v.Fretina, 5 S.M.D. 139, 142 (1991). The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake,190 Conn. 631, 639, 461 A.2d 1375 (1983); Rood v. Russo, 161 Conn. 1, 3,283 A.2d 220 (1971); Greene v. Perry, 62 Conn. App. 338, 343, 771 A.2d 196, cert. denied 256 Conn. 917, 773 A.2d 943 (2001); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991). The trial court is not bound even by even uncontroverted evidence. Bieluch v. Bieluch, 199 Conn. 550, 555, 509 A.2d 8
(1986); Acheson v. White, 195 Conn. 211, 217, 487 A.2d 197 (1985); Meirv. Meir, 15 S.M.D. ___ (McCarthy F.S.M., 2001).
There are two methods which the court considered in figuring a proper deviation based on this claim. The first is to simply accept as credible the defendant's claim that his cab lease amounts to $452.00 per week. His incidental expense claim is more troublesome. While some of these expenses are undoubtedly appropriate deductions, the court does not feel the full amount claimed is credible. See note 2. The second methodology is inspired by the defendant's disclosure on the General Testimony statement submitted that his gross income for the year 2000 was $20,772.00. The court assumes that this amount represented his personal gross for tax purposes. This is somewhat consistent with the present claimed gross if deductions are allowed for the cab rental but not the incidentals.
However, there is an additional troublesome element. At the time of the dissolution judgment, the defendant worked as a meter reader for Northeast Utilities. His last financial affidavit, filed during the 1990 contempt episode, disclosed average weekly gross income of $564.36 with a net of $400.32. His testimony at the present hearing indicated that when he left that employment he was earning about $13.75 an hour. He left the job at Northeast Utilities at the end of 1995 to go to Puerto Rico. He claims he went to assist his daughter's mother[3] with "arthritis problems" and overstayed his leave from work. Eventually, he left Puerto Rico, returning not to Connecticut but to Florida. He did not seek a job with a power company in Florida because "they don't pay good enough". See Transcript, 19-20.
This scenario raises several issues. The defendant's departure from his CT Page 9794 job at Northeast Utilities was clearly voluntary. So was his election to return to Florida rather than Connecticut. Furthermore, it is difficult to fathom how a man who had the skills, training and experience to command a $564.36 per week gross income in 1990 should be content to settle for less in 2002. At the very least, evidence of diligent efforts to seek such employment would be in order. However, no such evidence was proffered, and the court finds that the defendant has failed to obtain employment commensurate with his earning capacity.
Considering all of the facts and circumstances, the court finds that strict application of the child support guidelines is inequitable and inappropriate in this case. The court finds that deviation is warranted under the following criteria: the defendant father's earning capacity, Regs., Conn. State Agencies § 46b-215a-3-(b)(2)(B); the unreimbursed job-related expenses of the defendant's employment, particularly the cab lease payments, Regs., Conn. State Agencies § 46b-215a-3-(b)(3)(B); the best interests of the minor child, Regs., Conn. State Agencies §46b-215a-3-(b)(6)(B); and other equitable factors Regs., Conn. State Agencies § 46b-215a-3-(b)(6)(C).
In determining the appropriate support order the court has considered all of the factors set forth in General Statutes § 46b-84 (d) and the child support guidelines. Based on those factors and the deviation stated, a range of $70.00 to $103.00 per week would be appropriate depending on weight given to the various criteria and factors.
The motion to modify is granted. The court orders the defendant to pay $88.00 per week in current support for the remaining minor child. Additionally, he is to pay $22.00 per week on the arrearage. The order is retroactive to December 7, 2001, the date that abode service of the motion was made upon the plaintiff in compliance with General Statutes § 52-50. Based on the testimony of the support enforcement officer, which was uncontroverted, the court finds an arrearage of $37,996.87 to the plaintiff and of January 9, 2002 subject to adjustment for the retrospective effect of this modification. The support enforcement division is directed to recompute the arrearage based on this modification and notify both parties and Florida support enforcement of the result. The income withholding order is modified accordingly. All other prior orders including the orders regarding medical insurance and unreimbursed medical costs remain in effect.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate CT Page 9795